OPINION
Defendant-appellant, Melissa Smallwood, appeals the granting of permanent custody of her children, six-year-old Birchell and four-year-old Tiffany, to the Butler County Children Services Board (BCCSB). In 1993, Tiffany and Birchell were removed from appellant's custody due to allegations of physical abuse. Birchell and Tiffany were adjudicated dependent, and legal custody was granted to appellant's sister and brother-in-law, Lori and George Banfield. With the granting of legal custody, appellant retained residual parental rights including visitation with Birchell and Tiffany. Lori and George lived in several different residences over the next two years, including one which was next door to appellant and her mother, Mary Smallwood.
In April 1996, Lori abandoned George and their family. George retained custody of their six children in addition to retaining custody of Birchell and Tiffany. George subsequently filed for divorce. George testified at the permanent custody hearing that in January 1996, Birchell was returned to appellant's custody at the insistence of appellant and Mary Smallwood. In August 1996, George obtained employment and began to utilize Mary Smallwood for child care services for Tiffany. George maintained that he never relinquished custody of Tiffany to appellant, although he admitted that sometimes Tiffany would not want to leave her grandmother's house and would stay overnight.
Sometime in 1996, BCCSB received a referral that Birchell and Tiffany were living with appellant and her mother and that the situation was very chaotic. The referral was investigated and BCCSB workers witnessed an altercation between appellant and Birchell which involved them slapping and punching each other. A complaint for dependency was filed in October 1996 based on the psychological illnesses and parental failings of appellant and George's inappropriate exposure of Birchell and Tiffany to their mother.
On October 17, 1996, an ex parte emergency order was signed which granted temporary custody of Birchell and Tiffany to BCCSB. BCCSB requested permanent custody at that time. No efforts at reunification were made. At a hearing on January 29, 1997, permanent custody of Birchell and Tiffany was granted to BCCSB. Appellant appeals the termination of her parental rights in two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DETERMINING THAT TIFFANY SMALLWOOD WAS DEPENDENT.
Appellant appeals the termination of her parental rights as to Tiffany only. Appellant contends that the trial court's determination that Tiffany was dependent was against the manifest weight of the evidence. In support of this argument, appellant asserts that because Tiffany was never returned to her custody, Tiffany should not have been found to be dependent. Appellant contends that legal custody of Tiffany should have remained with George Banfield. However, George Banfield is not a party to this appeal. Therefore, we will not discuss whether legal custody could or should have remained with George Banfield. We will only address whether the trial court erred in finding Tiffany to be a dependant child and terminating appellant's parental rights by granting permanent custody of Tiffany to BCCSB.
R.C. 2151.04 defines a dependent child as any child: (B) who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian or custodian; or (C) whose condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship. The trial court must first find by clear and convincing evidence that Tiffany was a dependent child before proceeding with a motion for permanent custody. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
A review of the record reveals that in 1994, appellant was evaluated by Dr. Roger Fisher, a clinical psychologist, who diagnosed appellant as having hallucinatory tendencies, borderline retardation, epilepsy, and extreme dependency on her mother. Based on this diagnosis, Dr. Fisher concluded that appellant:
 [h]as never been able to parent appropriately, at a level that would ensure safety and good care for her children. I don't think that her condition is such that it will ever change. And it would be my opinion that she would never be able to parent a child.
Dr. Fisher further concluded that he was not aware of any services or medication which would make it safe for the children to be in appellant's care.
Additionally, BCCSB caseworkers Lisa Beckman and Tricia Hawkins testified about the chaotic situation they encountered when they visited appellant's home in October 1996. Beckman and Hawkins both testified regarding the inappropriate interaction between Birchell and appellant, which involved slapping and punching each other and wrestling around on the floor in a rough manner.
Furthermore, appellant testified at the hearing that Birchell and Tiffany were indeed living with herself and her mother at the time BCCSB became involved in October 1996. Therefore, when BCCSB became involved with appellant and the children again in 1996, the determination to seek permanent custody was based on its prior involvement with appellant and her past mental health problems. BCCSB filed the complaint for dependency and permanent custody based on this prior finding of dependency and the testimony presented by Dr. Fisher that appellant's mental condition would never change.
After reviewing the record, we find that there is competent, credible evidence to support the trial court's finding that Tiffany was living with appellant and not with her legal custodian, George Banfield, and was therefore a dependent child. Once a finding of dependency has been made, a hearing must be held to determine whether permanent custody should be granted to BCCSB. A court may grant permanent custody if it finds (1) it is in the best interest of the child, R.C. 2151.414(D); (2) the child cannot be placed with either parent within a reasonable time, R.C. 2151.414(E); and (3) reasonable efforts were made to reunite parent and child or that such efforts would have been futile. R.C. 2151.419. Only if these requisites are supported by clear and convincing evidence can a court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95.
A review of the record reveals that the trial court considered the best interest of Tiffany by examining factors relevant to that case pursuant to R.C. 2151.414(D). A nonexclusive list of factors relevant to the best interest is found in R.C.2151.414(D), which provides in pertinent part:
 In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following: (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child and his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The trial court made the finding that "the granting of the instant motion (permanent custody) by the BCCSB is in the best interest of these children." The trial court based this finding on the need for a legally secure placement of these children and that "[t]here is substantial probability that the children herein will be successfully placed in appropriate adoptive homes." Based on the foregoing, we find that there is clear and convincing evidence supporting the trial court's finding that it is in the best interest of the children to be placed in the permanent custody of BCCSB.
The trial court must then determine whether the child can be placed with a parent within a reasonable period of time. At a hearing on the motion, the agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all relevant evidence, the court determines, by clear and convincing evidence, that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents.
In the case at bar, the trial court determined that BCCSB has had an extensive history with appellant and her children dating back to 1993 when the children were initially removed from appellant's custody. The trial court specifically found that the condition set forth in R.C. 2151.414(E)(2) existed. As relevant to this case, R.C. 2151.414(E)(2) provides:
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exists as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 (2) The severe and chronic mental illness, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future.
Based on the testimony of Dr. Fisher that appellant had hallucinatory tendencies, borderline retardation, epilepsy, and extreme dependency on her mother, the trial court found that appellant suffered from a mental illness and was unable to provide an adequate home for Tiffany at the present time and in the foreseeable future. Based on these findings, the trial court made the determination that "these children cannot be placed with any parent within a reasonable period of time."
Based on our review of the record, this court finds that clear and convincing evidence existed from which the trial court found that Tiffany could not be placed with either parent within a reasonable period of time.
Finally, the trial court must determine pursuant to R.C.2151.419 whether reasonable efforts were made to reunite parent and child or that such efforts would have been futile. In its final judgment entry, the trial court specifically found that BCCSB has used reasonable efforts to prevent the need for these children to live outside of a parent's home.
Upon consideration of the evidence presented, we find that there was competent evidence in the record as to the applicable factors set forth in R.C. 2151.414(D) and (E), as well as other relevant evidence as to appellant's mental condition, which made her unable to provide an adequate home for Tiffany. The court finds, therefore, that there was clear and convincing evidence to support the trial court's award of permanent custody of Tiffany to BCCSB. Accordingly, appellant's first assignment of error is not well-taken.
Assignment of Error No. 2:
 APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
Appellant argues that her constitutional right to effective assistance of counsel was violated where counsel failed to present expert testimony to prove that she lacked a cognizable mental illness. The report submitted to the court by Dr. Fisher mentions that appellant had been committed to the Pauline Warfield Lewis Center in 1994. Appellant was released from the center because "she did not suffer from any mental disorder which would justify prolonged treatment." Appellant argues that she was denied effective assistance of counsel because her trial counsel did not call a member of the Pauline Warfield Lewis Center to testify about their diagnosis of appellant's mental condition.
The Ohio Legislature has extended the right of appointed counsel to indigent parents in a parental termination proceeding pursuant to R.C. 2151.352. In re Kirk (Jan. 21, 1997), Butler App. No. CA96-03-051, unreported, at 3. The right to counsel includes the right to effective assistance of counsel. McMann v. Richardson (1980), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449. The test used to determine whether a parent has been denied effective assistance of counsel in a permanent, involuntary termination of parental rights is the two pronged test set forth in Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable.
Id. at 687, 104 S.Ct. at 2064. The burden rests upon appellant to show how counsel breached the duty to provide reasonable representation. In re Hannah (1995), 106 Ohio App.3d 766, 769.
A review of Dr. Fisher's report shows that it not only contains the information from the Pauline Warfield Lewis Center, but also contained summaries from other mental health professionals who assessed appellant. The report stated that Dr. Walters of the Children's Diagnostic Center found that appellant suffered from visual and/or auditory hallucinations and thought disorder, and Dr. Hopes of the Forensic Center found appellant to be mentally retarded and mentally ill.
Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. State v. Cantwell (Nov. 24, 1997), Clermont App. No. CA97-02-018, unreported, at 5. Furthermore, trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85.
Based upon the testimony of Dr. Fisher and his review of earlier mental assessments, we do not find that failure to call a potentially favorable witness rises to the level of seriousness so as to have deprived appellant of a fair trial. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.